**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| DEAN R. BARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-00984-BCW |
| | ) | |
| DISCOVER FINANCIAL | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant's Motion to Compel Arbitration and to Stay Action (Doc. #11). The Court, being duly advised of the premises, grants said motion.

Defendant Discover Bank[1] ("Discover") filed a Notice of Removal on November 22, 2017, removing Plaintiff Dean R. Barrett's claim to this Court based on federal question jurisdiction, 28 U.S.C. § 1331. Barrett alleges Discovery violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, by improperly accessing Barrett's consumer records.

On December 11, 2017, Discover filed the instant motion to enforce the arbitration provision of the Cardmember Agreement that governed the relationship between the parties. (Doc. #11). Barrett opposes the motion, asserting that that the arbitration agreement is invalidated and inapplicable due to his bankruptcy discharge.

**LEGAL STANDARD**

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), sets forth "a national policy" in favor of arbitration. Nitro-Life Techs., L.L.C. v. Howard, 568 U.S. 17, 21 (8th Cir. 2012). "In light of this federal policy, arbitration agreements are to be enforced unless a party can show that

---

[1] Defendant is named in the complaint as Discover Financial Services, LLC, but indicates the proper named entity is "Discover Bank." (Doc. #1).

it will not be able to vindicate its rights in the arbitral forum." <u>Faber v. Menard, Inc.</u>, 367 F.3d 1048, 1052 (8th Cir. 2004) (citing <u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 90-92 (2000)). "[This policy] requires courts to enforce agreements to arbitrate according to their terms . . . . That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." <u>CompuCredit Corp. v. Greenwood</u>, 565 U.S. 95, 98 (2012).

In the Eighth Circuit, "the very existence of an arbitration clause creates a presumption of arbitrability that should be controlling unless there is positive assurance that the contract cannot be interpreted to include the particular dispute at issue." <u>Guiterrez v. State Line Nissan, Inc.</u>, No. 08-0285-CV-W-FJG, 2008 WL 3155896, at *1 (W.D. Mo. 2008) (citing <u>Daniel Constr. Co. v. Local 257, IBEW</u>, 856 F.2d 1174, 1181 (8th Cir. 1988)).

However, "the FAA also imposes a basic principle: arbitration is a process of consent and . . . a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>Catamaran Corp. v. Towncrest Pharm.</u>, 864 F.3d 966, 970 (8th Cir. 2017) (citing <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002)). Thus, to determine whether a claim should be resolved through arbitration, the Court considers whether the following two requirements are met: (1) there is a valid agreement to arbitrate; and (2) the claim at issue falls within the scope of the arbitration agreement. <u>MedCam, Inc. v. MCNC</u>, 414 F.3d 972, 974 (8th Cir. 2005).

## A.  A VALID AGREEMENT TO ARBITRATE EXISTS.

Discover argues "[t]here is no question that the Cardmember Agreement and Arbitration of Disputes Provision are valid under Delaware law," such that the Court should compel the parties to arbitrate. In opposition, Barrett argues the bankruptcy discharge that he received on

2

May 26, 2015 invalidated the Cardmember Agreement and the Arbitration of Disputes Provision, such that he is not bound to arbitrate his claim.

"Whether an arbitration agreement is valid is a matter of state contract law." Faber, 367 F.3d at 1052 (citing Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001); 9 U.S.C. § 2 (providing that arbitration agreements are valid and enforceable unless grounds exist at law or in equity for the revocation of any contract). The Cardmember Agreement provides that it is "governed by the laws of the State of Delaware and applicable federal laws." (Doc. #12-1 at 9). Barrett does not dispute the validity of the arbitration provision under Delaware law; rather, Barrett asserts that his bankruptcy discharge terminated his relationship with Discover and, in the absence of any reaffirmation agreement, invalidated any contractual agreement to arbitrate. Therefore, the dispositive issue is the legal impact of Barrett's bankruptcy discharge relative to the Cardmember Agreement and the Arbitration of Disputes Provision.[2]

"A discharge in a Chapter 7 case discharges the debtor from all debts that arose before the case was filed . . . ." Petty v. Petty, 491 B.R. 554, 558 (8th Cir. B.A.P. 2013) (citing 11 U.S.C. § 727(b)). "A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. However, such a discharge extinguishes *only* "the personal liability of the debtor." Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (emphasis in original) (citing 11 U.S.C. §§ 727, 524(a)(1)); Falco v. Farmers Ins. Grps., Case No. 4:12-CV-00134-BCW, 2014 WL 11394655, at *4 (W.D. Mo. March 26, 2014) ("[D]ischarge relieves the debtor only from personal liability to the creditor," but does not impact the validity of a pre-

---

[2] The Court notes that the Arbitration of Disputes Provision ("arbitration provision") was not part of the original January 1992 Cardmember Agreement; however Discover added the arbitration provision in 1999 and sent Barrett notice of the amendment and an opt-out notice. Barrett did not execute the opt-out notice, and continued using the credit account. Barrett does not challenge the amendment process resulting in the incorporation of the arbitration provision into the Cardmember Agreement.

existing secured lien.). Therefore, while the bankruptcy discharge extinguished Barrett's personal obligation to pay under the Cardmember Agreement, the discharge did not impact Barrett's agreement to the arbitration provision. "A bankruptcy discharge extinguishes the debtor's obligation to pay, but the other contractual provisions remain enforceable." Chavez v. Get It No, LLC, Case No. 17-1480 (DWF/HB), 2018 WL 461130, at *2 (D. Minn. Jan. 16, 2018) (citing Gadomski v. Wells Fargo Bank, Civ. No. 17-00691, 2018 WL 263903, at *3 (E.D. Cal. Jan. 2, 2018)). For these reasons, the Court concludes a valid agreement to arbitrate exists between Barrett and Discover, despite Barrett's bankruptcy discharge, and the Court considers whether Barrett's FCRA claim falls within the provision's scope.

### B. THE CLAIM FALLS WITHIN THE AGREEMENT'S SCOPE.

Discover argues that Barrett's FCRA claim falls within the broad scope of the arbitration provision because the provision expressly covers any claim based on statute that relates to Barrett's credit account, the relationship between Barrett and Discover, and/or "the enforceability or scope of this arbitration agreement . . . ." Barrett argues the FCRA claim is not within the scope of the arbitration provision because the provision only covers claims "arising from or relating to" a credit account, and Barrett's credit account did not exist after his bankruptcy discharge.

The Court notes that Barrett's argument, with respect to the issue of scope, could be construed as a restatement of Barrett's argument that the arbitration agreement is invalid. As discussed above, the Court finds the arbitration agreement valid, and thus considers the agreement's applicable scope, as dictated by the applicable legal standard.

In determining the scope of an arbitration provision, the court must "presume[] arbitrability of any particular substantive dispute . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

4

dispute." Express Scripts, Inc. v. Aegon Direct Mktg. Servs., 516 F.3d 695, 700 (8th Cir. 2008) (citing AT&T Technologies, Inc. v. Commc'ns Workers of America, 475 U.S. 643, 648-49 (1986)). Indeed, "[a]rbitration may be compelled under a broad arbitration clause . . . so long as the underlying factual allegations simply touch matters covered by the arbitration provision." PRM Energy Sys. v. Primenergy, LLC, 592 F.3d 830, 837 (8th Cir. 2010) (citing 3M Co. v. Amtex Sys., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008)).

As noted above, Barrett's bankruptcy discharge impacted only the obligation to pay, and not the underlying agreement between the parties. The arbitration provision states:

> ARBITRATION OF DISPUTES: In the event of any past, present or future claim or dispute . . . between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, or the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration.

(Doc. #12-1 at 15). Based on this contractual language, even disputes between Barrett and Discover about whether the arbitration provision applies should be sent to arbitration. Chavez v. Get It Now, LLC, Case No. 17-1490 (DWF/HB), 2018 WL 461130, at *2 (D. Minn. Jan. 16, 2018) (citing Fallo v. High-Tech Inst., 559 F.3d 874, 877 (8th Cir. 2009) (FAA allows for an arbitrator to determine the scope of agreement to arbitrate)). Moreover, the arbitration agreement specifically provides it "shall survive termination of your Account as well as . . . . any bankruptcy by you . . . ." (Doc. #12-1 at 26). Based on the language of the agreement to arbitrate and the policy preference in favor of arbitration, Barrett's FCRA claim falls within the arbitration agreement's scope under the circumstances of this case. Accordingly, it is hereby

ORDERED Motion to Compel Arbitration and to Stay Action (Doc. #11) is GRANTED. The above-captioned matter is STAYED pending arbitration. It is further

ORDERED Barrett's Motion for Leave to File Supplemental Authority (Doc. #24) is DENIED AS MOOT. It is further

ORDERED Discover's Motion to Stay Discovery (Doc. #26) is DENIED AS MOOT. It is further

ORDERED this matter is set for status conference by telephone on **Wednesday, August 1, 2018** at **9:30 a.m.**

IT IS SO ORDERED.

DATED: <u>May 1, 2018</u>

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT